**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JAY LEWIS, KELTON SHAW, MANUEL GARCIA, and JUNE LEFTWICH,** | |
| **Plaintiffs,** | **Case No.** |
| **v.** | |
| **DIRECTV, INC., DIRECTV, LLC, DIRECTSAT USA, LLC,** | |
| **Defendants.** | |

<u>**COMPLAINT**</u>

Plaintiffs Jay Lewis, Kelton Shaw, Manuel Garcia, and June Leftwich, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and DirectSat USA, LLC, ("Provider Defendant" or "HSP Defendant") (collectively with DIRECTV, "Defendants"); hereby state as follows:

**NATURE OF SUIT**

1.      DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme.  In order to expand and service

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to

its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged

tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair

its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded

vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting

policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging

them instead as "independent contractors" or employees of subordinate entities (including the

named service provider Defendants). But fortunately for these workers, it is the economic reality

of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the

definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards

Act ("FLSA").

2.      Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do

so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-

party business arrangements that shirk compliance with the FLSA.     *See* http://wage-

hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx    (last   visited

Oct. 9, 2014).  The DOL's Misclassification Initiative, launched under Vice President Biden's Middle

Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied

---

subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but
results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws.
*See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can
Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014);  David Weil, *Enforcing Labour Standards
in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

to individuals.[2]  In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws.  The DOL's Wage and Hour Division is also partnering with individual states, including Maryland, whose workers are being subjected to this practice.[3]

3.     The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA and related state wage-and-hour law.

## JURISDICTION AND VENUE

4.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds."  *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Oct. 9, 2014).

claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Jurisdiction over Plaintiffs' state law claims is based upon 28 U.S.C. § 1367, and, because the parties are diverse and each Plaintiff's individual claim, inclusive of attorneys' fees, exceeds $75,000, also satisfies the requirements of 28 U.S.C. § 1332.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

6.      Jay Lewis is an individual residing in Wyoming, Delaware.

7.      Kelton Shaw is an individual residing in Greensboro, North Carolina.

8.      Manuel Garcia is an individual residing in Rogers, Arkansas.

9.      June Leftwich is an individual residing in Landover, Maryland, in Prince George's County.

10.     DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

11.     Defendant DirectSat USA, LLC ("DirectSat") is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania.

12.     All Plaintiffs performed work for DIRECTV and, where applicable, the Provider Defendant in Maryland.

13.     All Defendants do business or have done business in Maryland.

**COMMON FACTUAL ALLEGATIONS**

**DIRECTV's Fissured Employment Scheme: The Provider Network**

14.     Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

15.     DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

16.     DIRECTV conceived of, formed, and manages DIRECTV's Provider Network. DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

17.     The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

18.     Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

19.     During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

20.     DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service

(collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

21.     The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

22.     The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.  DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

23.     Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

24.     After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and

thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

25.    When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

26.    Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

27.    Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA and applicable state employment laws.

**DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants**

28.    DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

29.     The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation—including the named Provider Defendant. Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is a description of the prior HSPs for which the Plaintiffs technicians worked and how those HSPs were ultimately acquired by DIRECTV.

**DTV Home Services II, LLC**

30.     Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

31.     Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**The Economic Reality: DIRECTV and its Provider Network Employ the Technicians**

---

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

32.     DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

33.     In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

34.     Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

35.     Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

36.     Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

37.     Through the Providers, DIRECTV also determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs with their paychecks.

38.     DIRECTV, through the Providers, exerted control over Plaintiffs sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers constitute employers subject to liability under the FLSA and state law.

39.     DIRECTV required Plaintiffs to hold themselves out as agents of DIRECTV.

40.     DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiffs received these instructions and performed the work as DIRECTV required. Plaintiffs were not given meaningful discretion in how they performed installations.

41.     DIRECTV publishes training materials that technicians such as Plaintiffs are required to review.

42.     DIRECTV requires that all technicians obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

43.     DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

44.     DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

45.     Upon information and belief, DIRECTV and Providers required technicians who were classified as 1099 independent contractors to sign "Subcontractor Agreements."

46.     Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

47.     The net effect of Defendants' policies and practices, instituted by DIRECTV and administered by Provider Defendants, is that Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

48.    As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

49.    Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

50.    There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

51.    Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

52.    In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

53.    Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

54.     Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

55.     In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these technicians paid an overtime premium for work done beyond 40 hours in a workweek.

56.     The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

57.     Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

58.     Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

59.     Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

12

60.     Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA and state law.

## LITIGATION HISTORY

### *Lang v. DIRECTV*

61.     Two Plaintiffs in this case—Jay Lewis and Kelton Shaw—previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, No. 10-1085-NJB.  The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

62.     Within the 60 days granted by the *Lang* court, Plaintiffs Jay Lewis and Kelton Shaw filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9). On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their work." (Doc. 71, at 5, 8.)  The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

63.     Within the 90 days granted by the *Acfalle* court, Plaintiffs Jay Lewis and Kelton Shaw filed the instant Complaint, joining their individual claims against Defendants.

### *Arnold v. DIRECTV*

64.     Plaintiffs Manuel Garcia and June Leftwich previously filed consents to become party plaintiffs in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including Manuel Garcia and June Leftwich, without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 90 days from the date of the order. *Arnold v. DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.) (Doc. 221, Notice of Voluntary Decertification).[5]

65.     Within the 90 days granted by the *Arnold* court, Plaintiffs Manuel Garcia and June Leftwich joined their individual claims in this action.

---

[5] Plaintiff June Leftwich is not identified on the list of opt-in plaintiffs dismissed from *Arnold* because certain of June Leftwich's claims – those for time served as a W-2 employee of a HSP and not for time claimed herein – remain active in *Arnold.*

## PLAINTIFFS' CLAIMS

**Jay Lewis**

66.     Plaintiff Jay Lewis is an individual residing in the state of Delaware. Between approximately 2007 and December 2012, Jay Lewis routinely worked more than 40 hours per week as a technician for DIRECTV and DirectSat in the states of Maryland and Delaware, and was unlawfully deprived of overtime compensation.

67.     In fact, Jay Lewis spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

68.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jay Lewis for all hours worked, and failing to reimburse Jay Lewis' necessary business expenses) resulted in Jay Lewis being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

69.     Jay Lewis brings claims against DIRECTV and DirectSat.

**Kelton Shaw**

70.     Plaintiff Kelton Shaw is an individual residing in the state of North Carolina. Between approximately March 2009 and May 2011, Kelton Shaw routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the states of Maryland and New Mexico, and was unlawfully deprived of overtime compensation.

71.     In fact, Kelton Shaw spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

72.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kelton Shaw for all hours worked, and failing to reimburse

15

Kelton Shaw's necessary business expenses) resulted in Kelton Shaw being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

73.     Kelton Shaw brings claims against DIRECTV.

**Manuel Garcia**

74.     Plaintiff Manuel Garcia is an individual residing in the state of Arkansas. Between approximately March 2012 and January 2014, Manuel Garcia routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC, in the states of Maryland and Delaware, and was unlawfully deprived of overtime compensation.

75.     In fact, Manuel Garcia spent in excess of 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

76.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Manuel Garcia for all hours worked, and failing to reimburse Manuel Garcia's necessary business expenses) resulted in Manuel Garcia being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

77.     Manuel Garcia brings claims against DIRECTV.

**June Leftwich**

78.     Plaintiff June Leftwich is an individual residing in the state of Maryland. Between approximately April 2013 and July 2013, June Leftwich routinely worked more than 40 hours per week as a technician for DIRECTV and DirectSat in the state of Maryland, and was unlawfully deprived of overtime compensation.

79.     In fact, June Leftwich spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

80.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate June Leftwich for all hours worked, and failing to reimburse June Leftwich's necessary business expenses) resulted in June Leftwich being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

81.     June Leftwich brings claims against DIRECTV and DirectSat.

**COUNT I**
**Violation of the Fair Labor Standards Act of 1938**
*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

82.     Plaintiffs re-allege all allegations set forth above.

83.     At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

84.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

85.     The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a).

86.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

87.     Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

88.     As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* or *Arnold* litigation, plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

89.     As to the Provider Defendant against which any Plaintiff makes a claim, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their original complaint in this action, *i.e.*, November 1, 2013,[6] plus periods of equitable tolling, because the Provider Defendant acted willfully and knew or showed reckless disregard in its violation of the FLSA.

90.     Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

91.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of

---

[6] Or from the date of filing this complaint for *Arnold* Plaintiffs Manuel Garcia and June Leftwich.

unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

92.     As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

93.     Plaintiffs request relief as described below and as permitted by law.

<u>**COUNT II**</u>
**Violation of Maryland Minimum Wage and Overtime Act**
(Md. Code Ann. § 3-401 *et seq.*)
*By Plaintiffs Jay Lewis, Manuel Garcia, and June Leftwich individually against each Plaintiff's previously identified Defendant(s)*

94.     Plaintiffs re-allege the allegations set forth above.

95.     Plaintiffs were "employees," and Defendants were "employers" pursuant to Md. Code Ann., Labor & Employ. § 3-501 and § 3-502.

96.     Defendants violated Maryland law, in relevant part, by failing to pay overtime premium pay to Plaintiffs as required by Maryland Labor and Employment Code §§ 3-415, 420.

97.     Defendants violated Maryland law, in relevant part, by willfully failing to compensate Plaintiffs for all wages earned and all hours worked at least at the minimum wage in violation of Maryland Labor and Employment Code § 3-413.

98.     As alleged herein, Plaintiffs were paid piece-rate for very limited and specific tasks that they completed for Defendants. They were not compensated for other tasks completed for Defendants' benefit. Moreover, Plaintiffs were not compensated for all time worked during the continuous workday.

99.     Plaintiffs have been damaged by Defendants' willful failure to compensate them as required by law.

100.    Pursuant to Maryland Labor and Employment Code § 3-427, Plaintiffs are entitled to payment for the difference between the wages paid to them and the wages required by statute, plus interest, attorneys' fees, and costs in amounts to be proved at trial.

101.    Plaintiffs request relief as described below and as permitted by law.

<u>**COUNT III**</u>
**Violation of Maryland Wage Payment and Collection Law**
(Md. Code Ann. § 3-501 *et seq.*)
*By Plaintiffs Jay Lewis, Manuel Garcia, and June Leftwich individually against each Plaintiff's previously identified Defendant(s)*

102.    Plaintiffs re-allege the allegations set forth above.

103.    Under Maryland law, Plaintiffs are entitled to timely payment of all wages earned and unpaid, by the next payday following termination of employment.

104.    Defendants willfully violated their obligations under Maryland law by failing to pay Plaintiffs all wages earned and unpaid by the next payday following termination.

105.    Defendants' failure to pay was not the result of a bona fide dispute under the Maryland statute.

106.    As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered damages.

107.    Pursuant to Maryland Labor and Employment Code § 3-507.2(b), Plaintiffs are entitled to recover three times the amount of unpaid wages plus interest, attorneys' fees, and costs in amounts to be proved at trial.

108.    Plaintiffs request relief as described below and as permitted by law.

<u>COUNT IV</u>
**Unlawful Wage Deductions (Chargebacks)**
(Md. Code Ann. § 3-503)
*By Plaintiffs Jay Lewis, Manuel Garcia, and June Leftwich individually against each Plaintiff's*
*previously identified Defendant(s)*

109.    Plaintiffs re-allege the allegations set forth above.

110.    Under Maryland Labor and Employment Code § 3-503, it is unlawful for any employer to make a deduction from an employee's wages unless it is ordered by a court, expressly authorized in writing by the employee, allowed by the Commissioner or otherwise in accord with the law.

111.    As alleged herein, Defendants regularly and impermissibly collected "chargebacks" from Plaintiffs' pay.

112.    Defendants' failure to pay was not the result of a bona fide dispute under the Maryland statute.

113.    As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered damages.

114.    Pursuant to Maryland Labor and Employment Code § 3-507.2(b), Plaintiffs are entitled to recover three times the amount of unpaid wages plus interest, attorneys' fees, and costs in amounts to be proved at trial.

115.    Plaintiffs request relief as described below and as permitted by law.

<u>COUNT V</u>
**Failure to Provide Wage Statements**
(Md. Code Ann. § 3-504)
*By Plaintiffs Jay Lewis, Manuel Garcia, and June Leftwich individually against each Plaintiff's previously identified Defendant(s)*

116.    Plaintiffs re-allege the allegations set forth above.

117.    Under Maryland Labor and Employment Code § 3-504, Defendants are required to provide itemized statements when they pay wages showing gross earnings and deductions along with other information.

118.    Under Maryland Labor and Employment Code § 3-914, Defendants are required to retain certain records regarding their employees and independent contractors, including rate of pay, amount of pay, "hours that each employee or independent contractor works each day and each workweek" and, "for all individuals who are not classified as employees, evidence that each individual is an exempt person or an independent contractor or its employee."

119.    Maryland Labor and Employment Code §§ 3-914 mandates Defendants provide each individual classified as an independent contractor with written notice of the classification upon hiring, and the Commissioner may assess a civil penalty of not more than $50 per day for each day the employer fails to provide the notice.

120.    Defendants willfully violated their obligations under Maryland Labor and Employment Code by failing to retain or to provide Plaintiffs with timely and accurate wage statements.

121.    As a direct and proximate result, Plaintiffs have suffered damages. Among other things, Defendants' failure led plaintiffs to believe that they were being paid for all hours and jobs actually worked; Defendants' wage statement failures prevented and will prevent Plaintiffs from

determining the true amounts of wages owed to them; and caused Plaintiffs and will cause them extra work and effort to determine their true wages and the identity of their employer(s).

122.    Plaintiffs request relief as described below and as permitted by law.

**COUNT VI**
**Workplace Fraud – Willful Misclassification**
(Md. Code Ann. §§ 3-903 3-904, 3-911)
*By Plaintiffs Jay Lewis, Manuel Garcia, and June Leftwich individually against each Plaintiff's*
*previously identified Defendant(s)*

123.    Plaintiffs re-allege the allegations set forth above.

124.    Under Maryland Labor and Employment Code § 3-903 and 904, Defendants are prohibited from misclassifying an individual's employment status.

125.    Plaintiffs performed work for remuneration paid by Defendants under the control and direction of DIRECTV through the Provider Defendants as alleged herein.

126.    Plaintiffs' services were never outside the usual course of services that Defendants provide. Plaintiffs were never engaged in any independently established trade, occupation, profession, or business in connection with their work for Defendants. Plaintiffs were never sole proprietors or part of a partnership in connection with their work for Defendants. Defendants nonetheless knowingly improperly treated Plaintiffs as independent contractors and as a result, Defendants paid Plaintiffs straight pay in the form of cash without taking the required payroll deductions or making the required contributions on their behalf for their work.

127.    As a direct and proximate result, Plaintiffs have suffered damages.

128.    Defendants are liable for civil penalties, restitution, and specific compliance pursuant to Maryland Labor and Employment Code §§ 3-907, 908, and 909. Pursuant to Maryland

Labor and Employment Code § 3-911, Plaintiffs are entitled to restitution, treble damages, interest, attorneys' fees, and costs in amounts to be proved at trial.

129.    Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a jury trial as to all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a.    Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b) and Maryland Labor and Employment Code § 3-401 *et seq.*;

b.    Award treble damages for unpaid wages under Maryland Labor and Employment Code § 3-507.2(b);

c.    Award restitution pursuant to Maryland Labor and Employment Code § 3-901 *et seq.*, and Maryland common law;

d.    Impose civil penalties as provided in Maryland Labor and Employment Code § 3-901 *et seq.*;

e.    Award liquidated damages under 29 U.S.C. § 216(b) and Maryland Labor and Employment Code §§ 3-401, 3-501, 3-901 *et seq.*;

f.    Award reasonable attorneys' fees under the Maryland Labor and Employment Code and Fair Labor Standards Act;

g.    Award pre-judgment interest;

h.    Award costs of suit under 29 U.S.C. § 216(b) and Maryland Labor and Employment Code §§ 3-401, 3-501, 3-901 *et seq.*; and

i.    Grant any further relief that the Court may deem just and equitable.

Dated: October 17, 2014                    Respectfully submitted,

                                           /s/ Megan K. Mechak

                                           **WOODLEY & MCGILLIVARY**
                                           Molly A. Elkin, Bar # 14201
                                           E-mail:  mae@wmlaborlaw.com
                                           Megan Kathleen Mechak, Bar # 27854
                                           Email: mkm@wmlaborlaw.com
                                           1101 Vermont Avenue, NW
                                           Suite 1000
                                           Washington, DC 20005
                                           Telephone:  202.833.8855
                                           Facsimile:  202.452.1090

                                           **STUEVE SIEGEL HANSON LLP**

                                           George A. Hanson, *PHV Forthcoming*
                                           MO Bar No. 43450
                                           460 Nichols Road, Suite 200
                                           Kansas City, Missouri 64112
                                           Telephone:    816-714-7100
                                           Facsimile:     816-714-7101
                                           Email:  hanson@stuevesiegel.com

                                           Ryan D. O'Dell, *PHV Forthcoming*
                                           CA Bar No. 290802
                                           500 West C Street, Suite 1750
                                           San Diego, California 92101
                                           Telephone:    619-400-5826
                                           Facsimile:     619-400-5832
                                           Email: odell@stuevesiegel.com

                                           **HEARIN, LLC**
                                           Jesse B. Hearin, III, *PHV Forthcoming*
                                           La. Bar Roll No. 22422
                                           1009 Carnation Street, Suite E
                                           Slidell, Louisiana 70460
                                           Telephone:    985-639-3377
                                           Email: jbhearin@hearinllc.com

                                           *Attorneys for Plaintiffs*